UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MERRILL LYNCH COMMERCIAL
FINANCE CORP.,

                      Plaintiff,                **MEMORANDUM & ORDER**

  -against-                                09 CV 4017 (DRH) (ARL)

RCI JEWELRY CORP., RODNEY HAKIMI,
CYRUS HAKIMI, RAYMOND HAKIMI,
and JOHN DOE #1 THROUGH JOHN DOE #12,
the last twelve names being fictitious and
unknown to Plaintiff; being persons having or
claiming an interest in or lien upon the Collateral
described in the complaint,

                      Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

Attorneys for Plaintiff
70 Lafayette Street
Seventh Floor
New York, New York 10013
By:    Spencer L. Schneider, Esq.
        Joel A. Siegel, Esq.

**LAW OFFICES OF MATIN EMOUNA**
Attorneys for Defendants
110 Old Country Road
Suite 3
Mineola, New York 11501
By:    Matin Emouna, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Merrill Lynch Commercial Finance Corp. ("Plaintiff" or "Merrill Lynch")

commenced this action against defendants RCI Jewelry ("RCI"), Rodney Hakimi, Cyrus Hakimi,

and Raymond Hakimi to recover money due under a loan agreement and personal guaranties.

Presently before the Court is Plaintiff's unopposed motion for summary judgment against RCI,

Raymond Hakimi, and Cyrus Hakimi (collectively, "Defendants")[1] pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

The following facts, taken from the pleadings and Plaintiff's Local Civil Rule 56.1 Statement ("Pl.'s 56.1"), have not been disputed by Defendants and will, therefore, be deemed admitted.[2]

### *The Parties*

Merrill Lynch is incorporated under the laws of the State of Delaware and is the "assignee of the interests of" Merrill Lynch Business Financial Services Inc. ("MLBFS"). (Compl. ¶ 1.) RCI is a New York corporation with its principal place of business in Great Neck, New York. (*Id.* ¶ 2.) Cyrus and Raymond Hakimi are domiciled in New York (*id.* ¶¶ 4, 5) and were, at all relevant times, principals of RCI (Decl. of Daniel J. Downs, dated May 3, 2010 ("Downs Decl.") ¶ 3).

### *The Loan Agreement*

On or about October 19, 2004, RCI and MLBFS entered into a Working Capital Management Account ("WCMA") Loan and Security Agreement ("Loan Agreement") under which MLBFS extended to RCI a commercial line of credit not to exceed $450,000. (Pl.'s 56.1 ¶

---

[1] In a July 19, 2010 cover letter enclosing the present motion, Plaintiff's counsel represented that Rodney Hakimi filed a Chapter 7 bankruptcy petition on April 26, 2010, and so Plaintiff does not seek summary judgment as against him.

[2] *See* Local Rule Civ. P. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

1; Downs Decl., Ex. A.) In exchange, RCI executed a promissory note that provided, in relevant part:

> FOR VALUE RECEIVED, [RCI] hereby promises to pay to the order of MLBFS . . . the following: (a) on the Maturity Date, or if earlier, on the date of termination of the WCMA Line of Credit, the WCMA Loan Balance; (b) interest at the Interest Rate (or, if applicable at the Default Rate) on the outstanding WCMA Loan Balance . . . ; and (c) on demand, all other sums payable pursuant to this Loan Agreement . . . .

(Downs Decl., Ex. A at § 2.1.) The Loan Agreement also set forth numerous occurrences that "shall constitute 'Event of Default' under this Loan Agreement," including:

> Failure to Perform. Any Credit Party shall default in the performance or observance of any covenant or agreement on its part to be performed or observed under any of the Loan Documents . . ., and such default shall continue unremedied for ten (10) Business Days . . .
> Bankruptcy Event. Any Bankruptcy Event shall occur.

(*Id.* at § 3.5(c), (f).) Pursuant to the Loan Agreement, if an "Event of Default" occurred, MLBFS could exercise one or more remedies, including "declar[ing] the principal of and interest on the WCMA Loan Balance, and all other Obligations to be forthwith due and payable . . . ." (*Id.* at § 3.6(a)(ii).)

*The Guaranties*

Plaintiff asserts that as inducement for entering into the Loan Agreement, Raymond and Cyrus Hakimi each gave MLBFS "their continuing, absolute and unconditional guaranties . . . of RCI's indebtedness to MLBFS." (Pl.'s 56.1 ¶ 2.) The guaranties signed by Raymond and Cyrus Hakimi on October 29, 2004 (the "Guaranties") provided, in relevant part, that:

> [T]he undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS: (i) the prompt and full payment when due . . . from [RCI]

3

> to MLBFS under the Guaranteed Documents [including the Loan Agreement], . . . and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of [RCI] set forth in the Guaranteed Documents . . . .

(Downs Decl., Ex. B.) The Guaranties also provided that:

> Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor . . . .

(*Id.*)

### *The Parties' Amendments to and MLBFS's Assignment of the Loan Agreement*

The initial maturity date under the Loan Agreement was October 31, 2005, but it was thereafter renewed annually, subject to RCI's creditworthiness. (Pl.'s 56.1 ¶ 3.) On December 5, 2005, the loan balance was increased to $600,000. (*Id.* ¶ 4.)

On December 29, 2007, MLBFS assigned its interests in the Loan Agreement and Guaranties to Merrill Lynch. (*Id.* ¶ 5.)

On January 31, 2008, in an amendment to the Loan Agreement, RCI agreed, *inter alia*, to (1) decrease its loan balance to $350,000 for at least one consecutive 30-day period prior to May 31st of each year; and (2) provide Merrill Lynch with its Accounts Receivable Aging reports within 45 days after the close of each of its fiscal quarters. (*Id.* ¶ 6.)

### *The Events of Default*

On June 30, 2009, Merrill Lynch sent RCI a letter informing RCI that it had failed to (1) decrease its loan balance to $350,000 for a 30-day period prior to May 31st, and (2) provide Merrill Lynch with its March 31, 2009 Accounts Receivable Aging report. (*Id.* ¶ 7.) Merrill Lynch formally demanded that Defendants cure these defaults within fifteen days (*Id.*; Downs

4

Decl., Ex. E.)

RCI failed to cure the defaults, which constituted an "Event of Default" as defined in the Loan Agreement. (*See* Downs Decl. ¶ 9.) On July 16, 2009, Merrill Lynch sent Defendants a notice of default and demand for payment. (Pl.'s 56.1 ¶ 8.) In that notice, Merrill Lynch exercised its rights, as set forth in the Loan Agreement, to terminate the line of credit, accelerate all of RCI's indebtedness to Merrill Lynch, and demand full repayment. (*Id.* ¶ 9.) RCI and Defendants, as guarantors, failed to repay the indebtedness as demanded in the July 16, 2009 letter. (Downs Decl. ¶ 12.)

On October 27, 2009, RCI filed a bankruptcy petition under Chapter 11, in the United States Bankruptcy Court for the Eastern District of New York. (Pl.'s 56.1 ¶ 12.) Although the bankruptcy case was subsequently dismissed, the filing of the bankruptcy petition constituted a "Bankruptcy Event," which was also considered an "Event of Default" as defined in the Loan Agreement. (*Id.*)

Plaintiff commenced this action on September 17, 2009 and filed the present motion. Defendants have not responded to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts or Plaintiff's Motion for Summary Judgment. For the reasons stated below, Plaintiff's motion is granted.

## *DISCUSSION*

**I.** *Applicable Law and Legal Standards*

    **A.** *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other

documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (*citing* Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not

6

credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (*citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (*citing Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (*citing Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d

Cir. 1987).

### B. *Unopposed Motion for Summary Judgment*

When a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are disputed in the record presented on the motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party. *See Champion*, 76 F .3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001).

In *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004), the Second Circuit addressed the proper analysis that districts courts should employ when presented with an unopposed motion for summary judgment. The court held that "Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles." *Id.* at 242. Thus, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Id.* In addition, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, see Local Civ. R. 56.2," *id.* at 246, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id.* at 244.

## II. *Plaintiff's Motion is Granted*

### A. *Choice of Law*

In its brief, Plaintiff assumes that New York law applies to this case. Ordinarily, in a diversity case, "a federal court would apply the law of the forum in which the court is located."

*Johnson & Johnson Fin. Corp. v. BSR Realty L.P.*, 1996 WL 546284, at *2 (E.D.N.Y. Sept. 19, 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "In applying the law of the forum, the court must also apply that state's choice of law rules." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *see also Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) ("As jurisdiction is grounded in diversity, we apply the forum state's choice-of-law rules."). Accordingly, the Court should apply New York's choice of law rules.

New York law is clear that "absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." *Hawes Office Sys., Inc. v. Wang Labs., Inc.*, 537 F. Supp. 939, 942 (E.D.N.Y. 1982); *see also Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996) (same).

The Loan Agreement explicitly provides that it "shall be governed in all respects by the laws of the State of Illinois, not including its conflict of laws provisions." (Downs Decl., Ex. A.) The Guaranties also set forth that they "shall be governed by the laws of the State of Illinois." (*Id.*, Ex. B.) Merrill Lynch's principal place of business is Chicago, Illinois (Compl. ¶ 1) and the Loan Agreement and Guaranties appear to have been executed in Illinois. Accordingly, Illinois law will apply to the present dispute. *See Johnson & Johnson Fin. Corp.*, 1996 WL 546284 at *3.

### B. *Plaintiff is Entitled to Summary Judgment*

A plaintiff may establish a *prima facie* case of liability on a promissory note by establishing "the existence of a promissory note, the amount due on such note and [the

9

defendant's] default." *Madden v. Am. Express*, 2002 WL 1496470, at *1 (N.D. Ill. July 10, 2002) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986)). Here, the undisputed facts demonstrate: (1) that the Loan Agreement contained a promissory note (Downs Decl., Ex. A), (2) the specific amounts due under that promissory note, and (3) that Defendants defaulted under the terms of the Loan Agreement. Having established this *prima facie* case, the burden shifts from Merrill Lynch to Defendants to put forth admissible evidence showing a genuine issue for trial. *See Meyer*, 781 F.2d at 1267. As Defendants have not opposed the pending motion, they have failed to meet that burden here.

With respect to the Guaranties, a *prima facie* case for enforcement of a guaranty made be made pursuant to Illinois law "when the plaintiff enters proof of the original indebtedness, the debtors' default and the guarantee." *Gen. Elec. Capital Corp. v. Donogh Homes, Inc.*, 1994 WL 53778, at *2 (N.D. Ill. Feb. 18, 1994) (quoting *Boulevard Bank Nat'l Ass'n v. Philips Med. Sys. Int'l B.V.*, 811 F. Supp. 357, 360 (N.D. Ill. 1993)) (internal quotation marks omitted); *see also Fidelity Mut. Life Ins. Co. v. Am. Nat. Bank & Trust Co. of Chicago*, 1994 WL 67852 at * 5 (N.D. Ill. Feb. 24, 1994); *Khayat v. Oharenko*, 1992 WL 159375, at *2 (N.D. Ill. July 1, 1992) (same); *Cont'l Bank N.A. v. Everett*, 760 F. Supp. 713, 716 (N.D. Ill. Mar. 28, 1991) (same), *aff'd* 964 F.2d 701 (7th Cir. 1992). Here, Merrill Lynch has submitted undisputed proof of the original indebtedness (the Loan Agreement), the Defendants' default, and the Guaranties. Accordingly, Merrill Lynch has established its *prima facie* case and Defendants have not put forth any valid defenses.

For these reasons, Merrill Lynch is entitled to judgment on both the promissory note contained in the Loan Agreement and the Guaranties. *See Gen. Elec. Capital Corp.*, 1994 WL

53778 at *2 ("Thus, the fact that [plaintiff] has established a prima facie case coupled with the fact that the defendants have no valid defenses mandates the conclusion that [plaintiff] is entitled to judgment . . . for enforcement of the guarantees as a matter of law."); *Khayat*, 1992 WL 159375 at *2 (finding plaintiff entitled to recovery when he established prima facie case that defendant failed to rebut); *Cont'l Bank N.A.*, 760 F. Supp. at 716 (finding that, when none of the elements of prima facie case were in dispute, plaintiff was "entitled to judgment on the guaranties unless defendants have a valid defense").

### III. *Damages*

In the July 16, 2009 notice of default and demand for payment (Downs Decl., Ex. F), Merrill Lynch informed Defendants of their liability for a total amount of $618,020.63, which included: $591,984.74 in principal, $2,436.66 in accrued interest as of July 16, 2009, and $29,599.23 in late charges, "plus attorney fees and all other charges allowable under the Loan Documents." (*Id.*)  The Complaint, which was filed on September 17, 2009, alleges that Merrill Lynch is entitled to damages in the aggregate amount of $625,893.31, plus further interest, attorneys' fees accrued in collecting the debt, and court costs. (Compl., WHEREFORE.) Finally, the Downs Declaration states that as of May 3, 2010, the Defendants owed Merrill Lynch a total sum of $640,189.12, which included a principal amount of $610,363.03, accrued interest of $226.86, and late charges and fees of $29,599.23. (Downs Decl. ¶ 16.)  This figure does not include "further accruing interest and plaintiff's costs of collection, including attorneys' fees." (*Id.*)

Given the passage of time, and given the apparent discrepancy between the interest amount listed in the July 16, 2009 notice of default and the May 3, 2010 Downs Declaration,

11

Merrill Lynch is hereby directed to submit an updated calculation of the amounts due and owing, including principal, interest, and costs of collection, within fifteen (15) days of the date of this Order.

Plaintiff's counsel has further requested that "the issue of plaintiff's attorneys' fees (provided for in the loan and guaranty documents) be severed." (Docket No. 34-5.) That request is GRANTED.

## *CONCLUSION*

For the reasons set forth above, Plaintiff's motion is GRANTED and judgment is hereby entered in favor of Plaintiff against RCI, Cyrus Hakimi, and Raymond Hakimi. Plaintiff is directed to submit an updated calculation of the amounts due and owing, including principal, interest, and costs of collection, within fifteen (15) days of the date of this Order. Plaintiff is granted leave to file a motion for attorneys' fees, and is directed to submit a proposed briefing schedule for that motion to the Court for endorsement.

**SO ORDERED.**

Dated: Central Islip, New York
       February 22, 2011                                     /s/
                                                                       Denis R. Hurley
                                                                       Unites States District Judge